UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Case No. 07-58052

    GRULKE, VICKI,  Chapter 7

        Debtor.  Honorable Walter Shapero

_____/

**OPINION GRANTING TRUSTEE'S MOTION TO DISMISS
PURSUANT TO 11 U.S.C. § 707(b)(3)**

Before the Court is the United States Trustee's ("UST") Motion to Dismiss Under 11 U.S.C. § 707(b)(3) of the Bankruptcy Code, Docket No. 18.[1]  The issue under § 707(b)(3) is whether the totality of the circumstances demonstrate abuse.

**I.**

The debtor, Vicki Grulke, filed her voluntary chapter 7 petition on September 11, 2007. On December 17, 2007, the UST filed the instant Motion to Dismiss Under 11 U.S.C. § 707(b)(3).  The UST argued this case constitutes abuse because certain of Debtor's Schedule J expenses are excessive and unreasonable; a significant amount of Debtor's monthly income goes towards paying the debts of her non-filing spouse; and, even if Debtor's contribution towards the repayment of her spouse's debt is not in and of itself an abuse, such payments conclude in September 2008 and as a result thereafter there will be significant available income with which to fund a chapter 13 plan.  Debtor objects to the UST's motion, arguing the totality of the circumstances.

Debtor is fifty-three years old and has been employed as an executive assistant for the last five years, currently earning a gross annual income of $56,600.  Debtor's husband, who is

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Publ. L. No. 109-8, § 102(a) (2005), became effective in cases filed on or after October 17, 2005.  All code section references are to Title 11 as amended by BAPCPA.

-1-

not a debtor, is fifty-six years old and earns approximately $42,000 in gross annual income from his sales position. Debtor and her husband do not have any dependants.

The unsecured obligations Debtor seeks to discharge total $116,509.83. Debtor testified that they are primarily consumer debts incurred in years 2005 and 2006 to pay normal bills and household expenses. Thus, the debts were incurred for the benefit of Debtor and her husband. Debtor's husband also has a sizeable amount of individual debt, including a Discover card balance of $7,500, a state court consent judgment on which the monthly payment is $1,400, and a loan of approximately $17,000 against a Thrivent Financial life insurance policy.

Line 6 of Debtor's Schedule I recites total net monthly take home pay of $3,017.84 for Debtor, and $3,500 for her husband. Debtor indicated changes in her testimony to two of the payroll deductions listed on her original Schedule I: the $200 monthly loan payback to Debtor's employer was no longer being deducted as that obligation had been fully satisfied; and, a 401K loan repayment of $43.82 would cease upon its full repayment in July 2008. Those changes increase Debtor's net monthly take home to $3,261.66. However, as the UST points out, based upon Debtor's pay advice admitted as Exhibit 4, it appears that the monthly net pay of $3,017.84 on Schedule I is inaccurate as it is calculated to include only two bi-weekly pay periods per month, when in fact there would be two months in which three pay periods fall. Multiplying $1,501.48 (net pay for two week period shown on Exhibit 4) by 26 (number of two week pay periods in a year) and dividing by 12, results in a net monthly figure of $3,253.20, to which would be added the indicated $243.82, producing a monthly total of $3,497.02 for Debtor for purposes of this motion (Debtor's spouse's monthly net is shown as $3,500.00). An amended Schedule I has not been filed.

Debtor's Schedule J, as filed, shows monthly expenses of $6,472.00, which appear to be for the entire household. At the hearing, Debtor testified that many of these expenses had changed and she sought to have a proposed amended Schedule J admitted as an exhibit. The UST objected because the proposed exhibit had not been filed and the objection was sustained. The Court informed Debtor that an amended Schedule J should be filed, but unfortunately it has not. This is unfortunate because it is not entirely clear what the actual expenses are. While Debtor testified as to new figures for many of the expense line items, her testimony was remarkably inconsistent, and therefore only of limited use.

-2-

Specific expense entries on Schedule J worth noting include food (scheduled at $600, Debtor testified it was $400 before changing her testimony to $650), clothing (scheduled originally at $150, Debtor testified this amount has increased to $250), laundry and dry cleaning (scheduled originally at $30, Debtor testified this amount has increased to $80), medical and dental expenses (scheduled originally at $110, increased to $200), recreation/entertainment (scheduled originally at $200, increased to $400), transportation (scheduled originally at $300, increased to $1,600), husband's taxes (scheduled originally at $900, decreased to $550), payment on husband's expense judgment (scheduled at $1,400, to conclude in September 2008), payment on husband's credit card (scheduled at $500, testified that is was $123 before changing testimony to say that line actually included two components, one for the Discover card of $200, another for a $230 monthly payment to Thrivent Financial, for a total of $430 on line 13d instead of the $500 originally scheduled), pet expenses (scheduled originally at $194, decreased to $100), and personal care expenses (scheduled originally at $136, decreased to $100). Debtor testified that there were two expenses not listed on Schedule J, $300 per month for her husband's business expenses, and payments toward a $1,940.00 cancellation of debt tax obligation that resulted from her husband's consent judgment. Debtor testified that her actual monthly expenses total $7,647.00; however, as noted, an amended Schedule J (which would have been the most credible factual source) has not been filed.

## **II.**

Authority to dismiss a case under chapter 7 is derived from § 707(b)(1), which provides in part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

In those cases where the presumption of abuse does not arise, or is otherwise rebutted, and where bad faith is not a factor, the Court is directed to consider the totality of the circumstances in

determining whether dismissal for abuse is warranted. 11 U.S.C. § 707(b)(3)(B). The UST carries the burden of establishing by a preponderance of the evidence the applicability of this ground for dismissal.

*A.*

In the Sixth Circuit, a totality of the circumstances inquiry under § 707(b)(3)(B) involves an analysis of whether the debtor is honest or needy. *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Either factor, or both, may provide sufficient justification for dismissal for abuse. The UST relies primarily on language in *Krohn* which provides that where debtors have the ability to repay a meaningful portion of their debts from future earnings, their chapter 7 filing should be dismissed as an abuse. 886 F.2d at 126. In *Krohn*, and later in *Behlke*, the Sixth Circuit opined that a debtor's ability to repay his debts out of future earnings may alone justify dismissal for abuse, or more precisely, that "the ability to pay may be but is not necessarily sufficient to warrant dismissal" for abuse. *Behlke*, 358 F.3d at 434-35; *Krohn*, 886 F.2d at 126. This Court has on several occasions reviewed the decisions in *Krohn* and *Behlke* and has interpreted those opinions as follows: the sheer mathematical ability to fund a chapter 13 plan can, and properly should, be considered and weighed as one, but only one, factor within a totality of the circumstances analysis. *See*, *e.g.*, *In re Shelby*, No. 06-48745 (Bankr. E.D. Mich. July 25, 2007) and *In re Beckerman*, No. 06-49172 (Bankr. E.D. Mich. February 4, 2008). If, after considering all of the relevant circumstances, equitable considerations favor dismissing the chapter 7 case based upon a debtor's ability to pay, it is within the Court's discretion to do so. Artificially limiting the Court's examination of a debtor's financial circumstances to one factor and one factor alone, the debtor's ability to repay debts out of future earnings, is at odds with the totality of the circumstances inquiry mandated by Congress and the message of *Krohn*, which itself observed that the ability to repay debts was "[a]mong the factors to be considered in deciding whether a debtor is needy . . . ." *Krohn* 886 F.2d at 126.

Whether a debtor is sufficiently needy to justify the relief sought under chapter 7 is determined by an examination of the following non-exclusive factors: (a) whether the debtor has the ability to repay his debts out of future earnings; (b) whether the debtor enjoys a stable source

-4-

of future income; (c) whether the debtor is eligible for chapter 13 relief; (d) whether there are state remedies with the potential to ease the debtor's financial predicament; (e) whether relief may be obtained through private negotiations with creditors; and (f) whether expenses can be reduced significantly without depriving the debtor of adequate food, clothing, shelter and other necessities. *In re Krohn*, 886 F. 2d at 126-27. One consideration relevant to the first factor, whether the debtor has the ability to repay debts, is whether the debtor has sufficient disposable income to fund a hypothetical chapter 13 plan. *Behlke*, 358 F.3d at 435.

### 1. Debtors' Ability to Repay Debts out of Future Earnings

According to Debtor's filed Schedules I and J, which have not been amended, there is a monthly surplus of $45.85. At the hearing, however, Debtor testified to various updates or changes that are needed for Schedules I and J, and testified generally and credibly that there was not, at that moment, a monthly surplus.

The Court notes that Debtor testified that the $1,400 monthly payment towards her husband's consent judgment would conclude in September of 2008. While Debtor testified that there are other expenses that will need to be paid in the place of this obligation when it ceases, particularly the Thrivent loan to which $200 was being paid each month, it appears these newly available funds could contribute significantly to funding a chapter 13 plan. While the Court is unable to ascertain precisely how much will be available to fund a plan, the Court concludes the UST has shown by preponderance of the evidence that a significant amount of Debtor's future earnings will be available to fund a chapter 13 plan.

### 2. Reduction of Expenses

A review of the Debtor's expenses reveals that belt tightening is not out of the question, and, in fact, is more than reasonable. Several expenses are particularly troubling in light of the relief Debtor seeks, most notably the entertainment/recreation expense.

Debtor originally scheduled $200 per month for entertainment/recreation. At the hearing, she testified that this amount was in fact $400. This expense is attributable to five monthly magazines, several "nights out" (e.g., dinner and a movie or show) per month with her husband, season tickets to a theater, an annual trip to Stratford, and an annual trip to northern Michigan to

play golf. The Court finds this expense excessive and unreasonable. *See*, *e.g.*, *In re Zuccarell*, 373 B.R. 508, 512 (Bankr. N.D. Ohio 2007) (finding $250 monthly recreation expense excessive); *In re DeRosear*, 265 B.R. 196, 210 (Bankr. S.D. Iowa 2001) (finding $269 monthly recreation expense excessive and reducing allowed expense to $50). Debtor's creditors should not be asked to fund this level of leisure activity. The reduction of just this expense to a more reasonable level, say $100, would allow Debtor to put $300 towards funding a repayment plan which, over 60 months, would result in a repayment dividend of roughly 15% to unsecured creditors.

Other expenses the Court takes issue with are the combined $330 Debtor testified is spent on clothing and dry cleaning each month. Debtor did not offer any reason why such expenditure is necessary, at least at that level, and the Court believes it could be reduced without seriously adversely affecting Debtor's lifestyle. The Court also believes that the $650 Debtor testified is spent on food each month can likewise be reduced. In short, there are areas beyond the recreation expense which are susceptible to belt tightening.

The Court also notes that the expenses associated with repaying the husband's debts are an element to be considered in the analysis. The schedules and testimony reveal that the husband's $3,500 monthly gross income is largely consumed by his taxes ($550), his work related expenses ($300), his monthly fuel consumption ($1,200), his monthly car payment ($311) – leaving only $1,139.00 before taking into account normal living expenses such as food and utilities, and the $1,830.00 per month being paid to his creditors. The deficit revealed by this simple math shows that Debtor is significantly subsidizing the payments to her husband's creditors at the expense of her own creditors.

The Debtor and her spouse live together and share normal everyday living expenses, each has earnings, and they have separate as well as joint obligations which appear to have been paid out of their joint incomes. The circumstances of the family unit as a whole cannot be so separated or ignored as to make their existence irrelevant to the inquiry in the filing spouse's case. One can understand why Debtor's husband might not wish to be in bankruptcy himself and that of course is his legal right; but where, as here, the practical effect of exercising that right produces a result beneficial to his separate creditors at the expense of those of the Debtor, that is

a fact that should be given some relevance and weight in examining the totality of the circumstances.

### III.

The facts of this case indicate that (1) Debtor has the ability to repay debt through future earnings, and (2) she is capable of significantly reducing her expenses without being deprived of food, clothing, shelter or other necessities.

For the foregoing reasons, the UST's Motion to Dismiss pursuant to § 707(b) is granted unless, within 20 days from the entry of the order effectuating the Opinion, the Debtor converts to a chapter 13 proceeding. The UST shall present an appropriate order.

**Signed on October 14, 2008**

                                                  **/s/ Walter Shapero**
                                           **Walter Shapero**
                                           **United States Bankruptcy Judge**